Good morning, your honors. I may have pleased the court. My name is Kate Stetson. I am here as a sponsor of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce to you, Sierra Barone and Walker Fortenberry, who will be arguing the case today. Ms. Barone will argue the opening. Ms. Fortenberry will argue rebuttal. Thank you. Thank you. Ms. Barone. Thank you, your honors. And may it please the court. My name is Sierra Barone, and on behalf of Mr. Stewart, we ask you to grant the motion for authorization to file a successive habeas petition. This court appointed counsel to address the question of whether recovered memories can constitute newly discovered evidence under section 2244B2. The answer is yes. The statute imposes no limitations on the type of evidence that can be considered newly recovered. Instead, the thrust of the statute comes from subsections B2B1 and B2B2 that place stringent requirements on the factual predicate. Regardless of the type of evidence being presented, the petitioner will have to satisfy those strict requirements in order to be successful in their habeas petition. But as this court explained in In re Stevens, at this stage, the petitioner need not satisfy the court that he can meet those strict requirements, instead, all that is required is a prime of fascia showing that he can do so. In Hubbard, this court said that the prime of fascia showing was a relatively low bar. And in Williams, this court said that all that is required is a sufficient showing of possible merit to warrant a fuller exploration by the district court. Mr. Stewart makes that showing of possible merit. Mr. Stewart's motion is also not barred by any procedural hurdles. This court sitting on Bonk and Longview Hooks recognized the Supreme Court's holding in McQuiggan's, which allows a showing of actual innocence to serve as a gateway through otherwise procedurally defaulted or out of time claims. This actual innocent standard is the same exact actual innocent standard presented in subsection B2B2 of this statute. It's also the same language that we see in section 2254E, which the state points to as an additional hurdle. And so if Mr. Stewart is able to satisfy just the regular requirements of the statute, then under McQuiggan, he does not have to worry about those procedural bars. Does the actual innocence have to result from a constitutional error? For purposes of McQuiggan, I don't know that the actual innocence has to result from the error, but as far as the procedural hurdles, but as far as this specific statute, yes, that constitutional error is one of those requirements. And so you agree that has to be shown for us to grant the certificate? Yes, absolutely. And so turning to that first requirement, which is showing a constitutional violation, there are two potential constitutional violations here that can serve as the basis for Mr. Stewart's claim. The first is actually the question the Supreme Court left open in McQuiggan, which is whether actual innocence is a freestanding constitutional claim. The second is that the second constitutional claim is a due process violation because Mr. Stewart was not competent to stand trial in light of his dissociative amnesia. Counsel, I don't want to throw you off early, but. I do have a concern that the actual petition in front of us, which is really quite well done, even though it was pro se, I mean, it does specify very clearly, like I'm bringing three constitutional claims and here they are. It's a Brady claim, a NAPU claim, and one that's both a violation of Brady and NAPU. And here's my newly discovered evidence. And it's the evidence that was suppressed about the pathologist report and then the investigative report. And although we do absolutely read pro se petitions very generously. It would seem it would be sort of a big lift to take a petition that says, I am identifying for you clearly my three constitutional claims and the newly discovered evidence that is the predicate for those claims, and then read that petition as also saying somewhere, also, I have a fourth claim and it said I was incompetent to stand trial. Well, of course, as you said, this was a pro se filing. And so I do plan on talking about those three otherwise enumerated. No, no. I was just, I was just, I was not asking you to talk about them, but rather to talk about how we find that fourth claim in this petition. Well, because even though Mr. Stewart didn't explicitly enumerate it, he spent a great amount of his pro se petition talking about those recovered memories. And so I don't think it's a situation where this court is sort of pulling out of thin air. He does raise the recovered memories, but he does not say that they are the predicate for a constitutional claim that he was tried while incompetent. That's correct, Your Honor. But since he does mention it, I think that this court in construing the pro se petition saw that, and that is what this court did appoint counsel on. And of course, that is what- That's not law of the case or anything, or are you suggesting that that is now law of the case, that we have already sort of definitively ruled that there is a fourth claim in this petition? It was my understanding that through appointing counsel, this court was construing the pro se petition as having that fourth claim, but even if that were not the case, I think this court should absolutely do so. Partly because it would be a claim of actual innocence. And of course, those procedural bars, which we see under McQuiggan, we don't want those type of procedural bars to hinder a situation where there is actual innocence being presented. And because Mr. did spend a great amount of time talking about the implications and the significance of those recovered memories. And so I do think that it should be considered a fourth claim here. And so the basis for that claim, the constitutional violation would be that due process violation that stemmed from his incompetence at trial. Now, the DC circuit in Wilson addressed a situation where there was amnesia being presented and considered whether it would result in a due process violation. And the answer is, well, of course, it's not always going to result in a due process violation. We have to look at the overall fairness of the trial. That is what the DC circuit read from the Supreme Court's dusky competence test, whether at heart the defendant was able to have a fair trial. And the Wilson court laid out several factors that could be considered in determining whether the amnesia affected the fairness of the trial. One of those things was the extent to which the evidence could be reconstructed. And in Wilson, the district court, at least, had indicated that because of all of the other evidence that was available, it was possible to extrinsically reconstruct what had happened. And so in Wilson, Wilson was committed an assault, had also committed some sort of robbery where he was stealing money, and then a car chase ensued with police. That car chase resulted in a car crash, which is where Wilson had lost his amnesia. But the evidence, among other things, included being found, of course, in that identified stolen vehicle with money, a firearm and a ski mask and hat that had matched other types of identification. And so there, there was enough evidence that could extrinsically recreate what had happened. Here, we don't see that at all because Mr. Stewart was the only eyewitness there. And even though there was also state witnesses testifying against Mr. Stewart, that testimony was directly based off of the things that Mr. Stewart had said to them on that day. And so all of it stems from or almost all of it stems from and relies upon Mr. Stewart's memories, which we now know to be tainted by mental illness. Can I ask you a question? I did read your brief on the dissociative amnesia and the evaluation you had done for your client, and I think I understand sort of the theory on why your client might forget what happened. But is there something in there that explains why he didn't just say, I don't recall? He said, no, I have a very detailed story about what happened and it was something different. And I can sort of intuit how, oh, if you have amnesia, you might fill in the blanks yourself. But I didn't see anything explaining it. This isn't just a case where a trial, he said, I don't remember a trial. He gave a very, very detailed account that is inconsistent with the memory he now has. So how does that happen? How do we deal with that? So the DSM has talked about what amnesia can look like. And so based off of how information is stored into the brain, it can make the memories, of course, incomplete or perhaps there would be a gap, but it can also manifest in other ways. And so there's a citation, I believe, in appointed counsel's opening brief. I don't have the page number, but the the name of the academic, I believe, is Nikolai Aksmakar from 2010. And he talks about how. But I mean, this isn't in the book, so I take it what you would say is this might not exactly be in the record, but this is enough for a prima facie case like this That's correct, Your Honor. It's sufficiently credible what happened here. Let the district court build a record. That's absolutely right. I would say to what you had just pointed out about letting the district court handle it. This is one of those things where there's a lot of information missing in this case, but that information is absolutely accessible. And so there was a preliminary psychiatric evaluation here of Mr. Stewart specifically, but it was said that further evaluation would be necessary. And so at this prima facie stage where we just have to show a possibility, Mr. Stewart doesn't have to ultimately prove it yet. We believe that there is enough information here to satisfy that. Oh, I'm sorry. Go ahead. Does it matter that the expert or consultant that basically said, I can't rule it in, can't rule it out. Is there a problem that Mr. Stewart identified this newly discovered memory in 2014 and asserted it twice in state court without developing any evidence? And now if you're successful, you will ask to develop evidence in federal court that was discovered earlier, alleged earlier in state court and not developed. Does that present a problem for you? I don't think so, your honor. So looking at Shin, Shin talks about whether the defendant was at fault. So it talks about, I think, negligent failure is the phrase used there. And so we see in the record that Mr. Stewart requested from the state court this type of evidentiary hearing and discovery in order to prove his claims. And the state court said no. And so we wouldn't see any type of bar from him, not from a failure point of view. But then even within that, I think what you're talking about, your honor, goes back to 2254E, which the state points to in their brief. And again, we see there that there is an exception for if the petitioner is able to establish actual innocence. So I think even if this court were to find that it was Mr. Stewart's fault or that there was a negligent failure to gain evidence for these actual innocence. Now, I do think that he... Counsel, can I ask you how we should conceptualize the inquiry we have to do under whatever it is, subsection two I's, that but for the constitutional error, so had not been tried before he had this recovered memory, you can show by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty. So as I am conceptualizing this, but tell me if I'm wrong. So I say to myself, all right, let's assume he's tried after he has recovered memory. So now he's not going to testify to the accident. He's going to testify that it's a suicide, although he does not remember the details. And then all the other evidence will come into the pathologist report, the guy he called to show the body to, the guy who got the threatening phone calls in the jail. And then I assume also the part where he sets the body on fire. And then we would have to say that by clear and convincing evidence, it's clear that having heard all of that, a jury could not convict. Yes, Your Honor. And I know on that standard, because I actually think this is very important. So I know that the statute, of course, talks about clear and convincing evidence, but it's also talking about whether a jury can convict. And so I think we have to remember the context in which a jury can convict in the first place. And a jury can only convict beyond a reasonable doubt. And so this standard is asking us whether there is enough evidence. If we take it as true that it does say if proven. So if it's taken as true that he had these memories, that these memories are at least genuine. Yes. And not that it happened that way, but that today this is how he remembers. Correct, Your Honor. So if we take that as true and consider it in light of all of the other evidence, that that creates reasonable doubt so that no reason just as a practical matter. And I really struggle with this as a practical matter. His original account, the accident, I mean, there was nothing illogical about it. It was plausible. It's just not obvious to me that a jury would be particularly more moved by someone coming in and saying it was a suicide. I don't have any details, but I can tell you, and we're assuming, I genuinely recall that it was a suicide. But all the other physical evidence stays the same. It doesn't actually seem to me. It doesn't seem intuitively obvious that, oh, yes, now the jury will see everything differently. I have to push back on you a little bit, Your Honor. So first of all, one of the things that we have to consider is that there's other corroborating information here. And actually at trial, it wasn't just the case that Mr. Seward presented what was a plausible theory, because I would agree with that he did. But if we look at the state's closing argument, they actually highlight all of the inconsistencies in Mr. Seward's accident theory. And so where we switch that, just kind of comparing that one for one for a moment, when we switch that to this suicide presentation, we actually see other corroborating information. And so we see a note from the victim contemplating suicidal thoughts and depression. We know that this occurred on the anniversary of a forced abortion that she had. And Mr. Seward is seeking to get more evidence on that. But at this stage, we think he makes that prima facie showing at least that it's at least corroborated. But not only does this evidence corroborate Mr. Seward's theory, it also undermines the state's theory. And we also have to consider all of the Brady allegations or the situations where the state actually withheld information. And so I know that, Judge Harris, you talked about, well, there's other kind of physical evidence. That physical evidence is also undermined when we look at the Brady allegations as well. And so I don't think it's a simple situation of, well, now it's a similarly plausible story. We do see a significant change in the evidence here that I think when considering this prima facie showing just this possibility at this stage, that it is sufficient to make out that actual innocence claim. I do, of course, see that I am over time. I had initially prepared to talk about the Brady allegations as well, but I don't want to overstay my welcome. And so if this court had any particular questions as to that, I'm certainly happy to address it. But otherwise, thank you very much for your time. Thank you, Ms. Burrell. May it please the court, I respectfully request that this court deny the authorization. After a full detailed story about an accident in his trial, Mr. Stewart said in 2014 he had some kind of repressed memory that would indicate that the victim actually committed suicide. Now, before I go into some of these allegations that Mr. Stewart has brought forth so far, I want to go back to where we started in this particular authorization process. We objected to the materials that he wished to append to the, because much like Shin versus Martinez-Ramirez, when we look at the 2254 problem, once you get to that point back in 2014, Mr. Stewart would not be able to present these materials to expand the record. And I want to go into that a little bit because this is very important. And as this court knows, this court's written several opinions about the limitations in AEDPA on federal courts and how they can review things and how they can grant relief. So this comes under the AEDPA statutory provisions. And within those provisions are great limitations. And I wanted to put this a bit in context because we're talking about the restrictions in 2244, absolutely. But it is in complement to 2254. And what we know is if you come through all the state system and come into federal court for the first time and you file, let's say, a timely petition and you presented your federal question, what has our Supreme Court told us happens? We don't give him another appeal. We don't look at his question anew. We're looking for reasonableness. We're looking for extreme malfunctions. And that's on first level review. So now we are at 2254 where an individual is asking to come back in to federal court again to undermine his state conviction and sentence. So obviously, that hesitation has to be there. And the direction from the Supreme Court, I think, is very helpful when we're looking at application of 2244. Now, the question presented by this court that we briefed on goes to whether recovered memory qualifies as newly discovered evidence warranting authorization to a successive petition, warranting authorization. And our response is standing alone. Absolutely not. Because just that allegation of some recovered memory does not qualify under 2244B2C in total. One cannot read out everything that is necessary there. And I believe Judge Harris sort of went into that direction a little bit earlier in the argument. It's not simply the factual predicate for the discovery. It's a factual predicate for the claim through the exercise of due diligence. And let's say that you can get through that level. It is not an or after that. It is an and. An and of facts underlying the claim if proven in light of the evidence as a whole. And here's another artifact that we need to look at as a whole. Mr. Stewart has suggested that he could go in and give new testimony that, no, no, this wasn't an accident. This was actually suicide undefined. We don't have a lot of factual basis for that particular assertion. But that's what he wants to do. That's not what we do in looking at this because as a whole means his state court record comes with him. We know his state court record is going to be different because that's the basis for what his claim is. It's disassociative amnesia. But I do. Yes, sir. Go ahead. I mean, otherwise, we know that. And 2244, the emphasis on is what the record is today. So you look at the totality of the record. That means his statements, his stories, his testimony will not go away because that it I really am wrestling with what is the when we ask about sort of the actual innocence prong of this provision, you know, is there enough there that no reasonable fact finder could convict? It does say you ask, you look at all of the evidence and ask, but for the constitutional error, could this person have been convicted? And if the constitutional error in this case you're hypothesizing is that he never should have been tried when before he had his recovered memory, when he was incompetent. I think we would take out, wouldn't we, the story he gave at trial? Because that never that is the constitutional error that he was tried and gave that story when, in fact, he now remembers it differently. So I think his accident account comes out, doesn't it? Your Honor, I would say no because of statutory construction. The construction we're looking at, B2B, talks about factual predicate of the claim. The entirety of 2244 is premised on the claim presented. The claim that this individual wants to raise in a successive action. The claim, and again, I believe you pointed this out. The claim to Brady claimed in an hour. Well, let's assume for a minute now that the claim is that he was incompetent to stand trial. I would object to. I know you would. But if that were the claim, if that were the claim, then how would we do? Then we would take out the accident account, right? We would not because I do not believe legally you can make that type of a claim. Competency, of course, is determined at the point of trial. And he was evaluated not only by state evaluators, but also he had his own evaluation done. He was competent to stand trial. Whether memories come back in as a portion of a part of B1 or the could not have been previously discovered doesn't make it a claim retroactive to competency. That's what's kind of hard to read in the thing for me, at least. I mean, you know, to what extent? I mean, if if if the constitutional error was that he had not have been should not have been tried. You know, I see Judge Harris's point. Normally, if you get new memory, it would be OK. I got new memory. You know, that's going to be considered along with what you said before. You've given inconsistent statements and all that gets looked into. I'm having I'm trying to figure out whether that's and if that's the way you look at it, I think, you know, Mr. Stewart has pretty significant problems proving a reasonable fact finder with no defense, no disrespect intended. But under that scenario, it's a much tougher case. You know, if, however, he's incompetent and therefore you don't get to consider it, it is still got to you have to look at a lot of evidence and it may or may not be enough, but you may not get to consider his other statement. Well, I see I see where you're going with the issue. And yes, if the trial, if he was if he was, in fact, incompetent, then, yes, the trial would be set aside to be competent to go forward. I suggest that wouldn't happen. But if we take that as a premise, that does not eradicate all of his statements and all of the testimony from the other individuals. That's right. And that's where we are. And we'll have the DNA on his clothes. We'll have his friend Stanton saying at that time, he said, I've lived, which is consistent with the writing in the jail. Can I ask you a question? I don't mean to cut you off from that, but I think we have a good understanding of the evidence and can look at that. But the here in 2000, Mr. Stewart alleges that he recovered his memory in 2014 and that was raised in two separate state court proceedings and no evidence was developed there. To what extent does that cause a problem for him? Mainly under Shin, I mean, I understand Shin has the exception, but it's really talking about could not be exercised without due diligence. And we now know there's at least some period of time where he had recovered his memory and we don't have more development of that. Is that a problem? It remains a problem, Your Honor, in two different ways. One is, it was a 2014 date that has been connected to that repressed memory disclosure. In 2015, he files a motion for a new trial. In 2016, in front of the hearing, before the hearing starts, he, with counsel, talked about the repressed memories. And counsel says on the record, per their agreement, they are only going forward on two claims, a juror claim and the expert claim. And that was it. That's a waiver. That's a procedural default and a waiver together. So is your point then that's where Shin kicks in, that we can't develop evidence in federal court when there was an opportunity to do so in state court, but it was not pursued? I think that is. I think it is also supported by the fact that he tried in 2018 in the PCR and he didn't present this evidence as he presented it here. Of course, we objected. We probably would have objected in state court too. But presenting it in an application for consideration, as we know, doesn't make it part of the state court record. He didn't even attempt that. He's always tied it back to the expert testimony and the Brady violation and the assumption of false testimony, which we say is a mischaracterization. It's a disagreement with that. Sorry to monopolize, but let me ask one more thing. I mean, we have this issue that's kind of your main point, that he has three grounds. They aren't recovery of repressed memory. And we should be kind of formal and stick to the three grounds. And this isn't sufficiently connected. This was talked about earlier. We certainly give some deference to pro se litigants. And he spends a bunch of time in his petition on his repressed memory and newly discovered memory. What's the best case you have for us that would say we're sticking to those three grounds in a pro se context when there's as much discussion of the newly discovered evidence as there is in this petition? I think that what I would want to rely on, Your Honor, are the claims presented. I hear you. That's what he's under an obligation to do. We can't respond to something if he doesn't present it. Well, I hear you, but he's listed three claims, no question about it. And but the point that they're making is that, hey, there's really a fourth one. It may not have a number four under the claims, but a reasonable assessment of that includes that. I'm trying to get at that issue is how do we make that determination, whether to rely on the three enumerated claims or whether we look at the whole petition, which talks about the new memory? What's the best authority you have on that? There are cases, and I don't know if I can remember something off the top of my head, for that particular wrinkle in this argument, but there are cases that say we don't invent the claims for proselytics. We can certainly be generous with the claims raised. I would submit to you it's probably a bit of a change from the substance of what we're all arguing. So I don't think it is just being benevolent and interpreting an argument that's been presented. He has consistently said, here's a new theory I want to present, but he has never said anything about competency. And I think it's more it's less case law that restricts the court and more determination of this particular case, because that's what the theory of being generous to pro se litigants is based on. What is he trying to say? And here we have what he's trying to say from 2015 forward. And that is he wants to attack the pathologist report. So I think the focus needs to be on what he's actually trying to say. And again, I apologize for not having it off the top of my head, but I know that I've had discussions even in our district court about the extent to which a court will go to modify a claim. This isn't modifying, interpreting. This would be creating whole cloth, something that this individual has never pressed either in state court or in his filings to this court. This is not, counsel, I don't think this is whole cloth at all. There's been, as you pointed out, there's evidence in terms of the suppressed memory, the amnesia, and the question of being recovered. That's not new. And as your chance to respond, we ask you, this court, to respond to that question. Right? That's why in your brief, you address it, correct? That's correct. So it's not here today as if the first time you hear it. So it's not whole cloth at all. But the thing is this, it's not the kind of, it's amazing how when people, when we get to mental issues, we somehow it becomes so difficult that we can understand in terms of bones and flesh. But it's not, to have amnesia doesn't mean you're insane. It's not that kind of competence. The competence would be, first of all, this person, he was allowed to represent himself. Assuming, of course, you disagree, and this has not been shown. But in terms of the disassociative amnesia, he's never been allowed to do that. No fault of the court. This is one of those areas where it's no one's, it's not anyone's fault. And I think that's why it's hard to disassociate your hand around because it's no one's fault. But you have to look at what happened was, if this is true, that a person who could not have helped, he could not have helped his counsel, let alone go and proceed pro se in a trial when he has, and Judge Harris asked this question about amnesia, a lot of times you just blank it. But the evidence talks about what an individual suffers from. This is from the Tracy Thomas, the psychological scientific evidence report. When an individual suffers from disassociative amnesia, memories may cut off from one's consciousness, leaving the individual with either no recollection of a particular event or a fabricated memory. He is the latter, a fabricated memory. Most people think, oh, I don't remember anything. No. But the mind, the brain has an incredible way of defending itself. That's why people become neurotic. I blame all of my faults on somebody else. That's how I get through the day. It's out of control. You become psychotic. Oh, sure. We all have it. I would have been a great contender if it hadn't been for you, that kind of thing. But the point is, it filled in the gap with a fabricated memory. So he couldn't have helped his counsel because he's telling, look, I was carrying her. I fell on top of her. That was my defense. That's all he had. That was his fabricated memory. And so he shouldn't have been allowed to even represent himself. Like I said, let alone he couldn't. So it's not like, oh, now he's trying to say he was insane. No, amnesia is not that. You can have amnesia and do rocket science as long as you remembered how to do space exploration, but you didn't remember a traumatic event. That's different. You're not insane. So that's what Hubbard talks about at this point here. First, is there a statute of limitations on actual innocence claims? Couldn't he bring this again and then put that fourth one in and another one? Actual innocence has never been recognized, either in the statute or by the United States Supreme Court. If it's based on a constitutional error, are you saying it's never been recognized? Now, this is where I have a little bit of a discussion to have with you on this point, a little bit of pushback. You were talking about the question that you gave to us to brief was whether recovered memory qualifies as newly discovered evidence warranting authorization. That goes to a portion of the statute, and that's the way it was briefed. Now, as I understand your argument about competency, that he wasn't competent because of a mental illness, essentially, or a mental condition that would have caused some problem. In the state of South Carolina, that does not qualify as some kind of a competency question that would prevent him from going pro se. Under State v. Barnes, it's a capital case out of South Carolina. South Carolina rejected Indiana v. Edwards. That would say there's a limitation on pro se determination based on mental health. We have some issues with- So, in South Carolina, you could be certified mental illness, and it's okay to represent yourself? Yes, sir. In a death case? Yes, sir. Well, good thing we have a federal court. Good thing we have federal courts. I personally argued against that, but if you'll recall in Indiana v. Edwards, the United States Supreme Court said, we'll leave it to the states. The states can consider mental illness, or they don't. South Carolina opted not to, and actually reversed a death sentence and sent it back on that because it was the defense that had asked for the individual to be barred from going forward pro se. We relied on Indiana v. Edwards. State did the appeal, and we lost. Had this been a competency, whether to be able to represent himself or to go forward in a competency-fying trial, I think it would have been briefed a tad differently. But the question actually says that the evidence may warrant it. Now, I suppose- Can I ask you a question? I'm sorry. I just see that we're running out of time. I did want to ask you a question about this SHIN issue and sort of procedural complications beyond the provision we're looking at now. I thought that our general rule was that at this stage, prima facie case, is it enough to send it to a district court? If there's some honkingly obvious procedural problem, like, well, obviously, you're way out of time or something, we might reach it in this posture. But usually, if you satisfy this, you send it back, and we let the district court sort of figure out whether they're- Not send it back. We send it to a district court for a hearing. And at that point, you kind of flesh out the procedural things. And just, I hear what you're saying about SHIN, and I think there are some other procedural issues here. But given that there is an actual innocence kind of gateway under the SHIN provision, and that's all kind of wrapped up in what we're doing, it seems, isn't this one where we would just kind of send all that to the district court? Well, it has to be that sufficient showing to warrant further exploration, which when I read that, I don't know whether it'll be a help to the court or not. But when I read that, I sort of equate it to almost a certificate of appealability. Whether you have to encourage somebody to go forward on the record, and that leads us right back to the record. We do have a lot of case law saying that at this stage, when we're just doing the prima facie thing, we don't usually address procedural complications that might arise. And I know we have that one case, which of course escapes me, saying, look, I can count 365 days. This is just not worth the time. But this doesn't quite seem like that to me, particularly because the SHIN provision has its own actual innocence kind of gateway, which is clearly implicated here. I mean, it's being... So I just... I see what you mean from SHIN. I would suggest that SHIN was, look, excuse me if I say Ramirez, because sometimes I say SHIN versus Kay, or SHIN versus Ramirez, so I switch back and forth with that. Under that case, it's looking at 2254E2. And of course, the first part is the failure to establish the state law basis. So you wouldn't get to actual innocence if there was not an excuse for the failure to establish the factual basis in the state court. So I think my answer would be we don't get there. And it's quite slim, and I'm over time. May I? Please, go ahead. Thank you, Your Honor. I think it's very similar to what we look at here. We still have to go back and look at the other evidence in the case. And I wanted to also just touch on really briefly that the other evidence is consistent with what he said before. So it is not just simply his accident case scenario, but what he said to his friend when the body was moved. The fact that the body was burned. If that pathology report can be challenged and say, well, I don't know if I say this is from the burning or if this is from bleeding internally. Even if we go past that, we still have the burning. And that is destroying evidence. The best evidence that we have of what a pathologist can look at and determine things from the physical side. And also we have the boyfriend, the new boyfriend who testified, that he was threatened as well. So we have continuity in the story that was actually told during the calamity riding from the jail. We don't have people saying that she was upset at that particular point in time, very suicidal. The note that he offers in and of itself, we have to look at the context of that. And she does say, I wish I could kill myself, but you wouldn't really care. So here, I'll let you go. But in and of itself is not a suicide note. So again, we look at the context of the case and I would rely on the brief for any other point that I might have missed in today's presentation. Thank you, Your Honor. Thank you, Ms. Brown. Ms. Fulton-Berry. Your Honors, and may it please the Court, I'm Walker Fulton-Berry here on behalf of Mr. Stewart. I'd like to emphasize a few points. First, to your point, Judge Harris, this is a, at this stage, it's only a prima facie showing. This court has applied that test in Ray Stevens as well as Long V. Hooks. So it's just a showing of possible merit. The primary weighing of the evidence is something that the district court does on remand. And I'd like to just emphasize that there's a lot that we don't know here. We've never had an independent pathologist examine the autopsy photos in light of Mr. Stewart's recovered memories. The agent stuck his notes as well. Those have never been admitted into evidence. And then Mr. Stewart has also requested access to the victim's mental health records. So all of that is something that should take place at the district court level under the rules of discovery. Can I ask you a question? The consultant, I forget the name, whose report was provided here who talks about this being a real thing and I can't rule it in, I can't rule it out. And talks about how, I think, hadn't had enough time to go further and make a more definitive ruling. Does the fact that Mr. Stewart, and I'm missing a criticism of him or the lawyers because that came relatively late. But if we look at Mr. Stewart, he recovered his memory in 2014. So it seems like there would have been time to do an evaluation. And since he recovered his memory, there were requests that, particularly given the state court proceedings where an expert could say one way or another to a reasonable degree of medical certainty, he's got this. And this particular person may not have had enough time. I get that. But given the fact that he had it in 2014, what do we make of that? Does that present a problem or do we just overlook that? You know, Judge Qualam, I don't think so. I think one of the things we are asking for on remand with respect to discovery is a full psychiatric evaluation. That's why we haven't been able to have one yet. I'm not sure the contours of how those diagnoses work. But I know that we do have a preliminary psychiatry report saying that it's definitely possible. And so I think on remand, that's what we're asking for is a full evaluation. Yeah, I guess my question is, since the current litigants and experts got involved, they might not have had time. But since Mr. Stewart's had his memory since 2014, as a party, he's had an opportunity and had counsel during that time in certain proceedings. He's had an opportunity to do a more fulsome review and hasn't done it. And now, so we have this thing that, of course, and I'm not suggesting anyone would submit the current report as evidence. It would never get in. But anyway, I'm just wondering what we make of the fact that there's years since he recovered his memory where he and other lawyers have elected not to do that. Well, Your Honor, I believe that the memories start first recurring in 2014 and first mentioned the issue in 2015 and since then has recovered additional memories. And again, I'm not sure how the ins and outs of recovering memories works. But my understanding is that they don't come all in at once. They may trickle in. So it may have taken him a while to realize, wait, this is happening to me before he got the first psychiatric evaluation. Counsel, it seems like this turns a little bit on the statutory language where the factual predicate couldn't have been discovered previously, right? I guess we're talking about what the previously means. And I have no memory for cases at this moment, but I feel like Judge Caldwell is raising an interesting question. I think we have cases saying, well, previously means before you filed your first habeas petition. That's the time that matters. Could you have raised it in your first petition? And if not, but then there is this question like, well, how much time do you get to sort of make authorization for the second one? So I guess this is actually a question. What do we know about the word previously? You're right. I also don't have the case names in mind, but it is true that the fourth circuit has previously held that previously means since the first habeas petition. And he first filed his habeas petition in 2009. And the memories began in 2014. So with respect to that issue, I don't think that that poses a problem. And also, Counselor, you made your response perhaps that the difficulty here, the factual predicate in most cases is because you would say, well, I found the gun and I didn't know where it was and I found it. That's when you could have just come in and done it. But this amnesia, as the experts and some of the literature says, it's a continuum. As you said, it doesn't come back at once. Matter of fact, the experts said be definitive. Sometimes you actually have to see the person in time experiencing that type of thing. But the point is that based on his history, it is consistent with this associated amnesia. And I think it's the honesty of the expert here, as opposed to the ones coming, well, I know definitively this person is this. No, I'm using science, the truth of science, not just for the purpose of what's right to say it. So it's a moving continuum as to what is the factual predicate being fully in fruition to be able to say, all right, this time you could have come in and done it. And I think that's one of the problems here because we're dealing with the mind. But I think that's what the great riddle is for when you talk about a situation where a person went to trial that is correct with not even having his memory. And I think that the nature of the mental illness makes it very difficult. But I would resort to any arguments against slippery slope type arguments is, you know, you have the elements of the statute. Those still have to be met. And I think that's a sufficient backstop. But I see that I'm out of time. If there are any more questions, for these reasons, we ask the court to grant Mr. Stewart's pre-filing authorization. Thank you. Yeah, let's thank you. Yes. Ms. Stetson. Please, counsel, stand up. I just want to say that I note that you are court appointed. And on behalf of the Fourth Circuit, we'd like to take note of that. We really appreciate it. And we depend on that. And it is, as they say, there's a cherry on the top of it to have these incredible law students here. And they well acquitted the Cavaliers today. Well acquitted the Cavaliers. Thank you so much. And of course, Ms. Brown, we thank you for your able representation as well. All right. With that, we wish you well and take care.
judges: Roger L. Gregory, Pamela A. Harris, A. Marvin Quattlebaum Jr.